# EXHIBIT C

# SEXUAL MISCONDUCT POLICY

Office of Equal Opportunity

***Purpose:*** To establish a work, educational and living environment at Tufts University that is free from sexual misconduct, including sex and gender discrimination; sexual and sex and gender-based harassment; sexual assault and rape; sexual exploitation; stalking; relationship violence (including domestic and dating violence), and retaliation through guidelines to promote and foster a safe campus climate.

**Revised**: September 2023

**Applicability**: Sexual misconduct is prohibited by University policy and may also be prohibited by state and federal law, including Title IX and the Violence Against Women Act (VAWA), as amended. This policy, along with Title IX and VAWA rights and responsibilities, applies to students, faculty, staff, patients, visitors, third parties and other community members. The Tufts Title IX Policy and its prohibited conduct may also overlap with conduct alleged under this policy.

**Resources to address sexual misconduct are available at:**
***oeo.tufts.edu/sexual-misconduct***

***Questions about this policy may be sent or referred to the Executive Director of the Office of Equal Opportunity and Title IX Coordinator, Jill Zellmer at 617.627.3298 or jill.zellmer@tufts.edu***

***Warning: Please note that this policy addresses issues of sexual violence and uses descriptions and examples of this conduct which can be triggering.***

## TABLE OF CONTENTS

***I. POLICY STATEMENT AND SUMMARY ....... 1***

***II. IMPORTANT DEFINITIONS ....... 6***

**A. Consent ....... 6**
1. What is consent? ....... 6
2. What is Not Consent? ....... 7
3. Consent Can Never Be Given By ....... 7
4. Consent and the Use of Alcohol or Drugs ....... 8

**B. Incapacity ....... 8**

**C. Types of Force ....... 10**
1. Physical Force, Violence ....... 10
2. Threats of Physical Violence ....... 10
3. Intimidation or Abuse of Power/Authority ....... 11
4. Coercion or Duress ....... 12

***III. DEFINING AND RECOGNIZING SEXUAL MISCONDUCT ....... 12***

**A. Sex- and/or Gender-Based Discrimination ....... 13**

**B. Sexual or Sex- and/or Gender-Based Harassment ....... 13**

**C. Sexual Assault ....... 15**
1. Non-Consensual Sexual Contact is ....... 16
2. Forced Sexual Contact is ....... 16
3. Non-Consensual Sexual Intercourse is ....... 17
4. Forced Sexual Intercourse is ....... 17

**D. Sexual Exploitation ....... 18**
1. Inducing Intoxication/Incapacitation for the Purpose of Sexual Activity ....... 18
2. Photographing or Video/Audio Taping of Sexual Activity ....... 18
3. Voyeurism ....... 19
4. Indecent Exposure ....... 19

**E. Stalking ....... 20**

**F. Relationship Violence (including dating/domestic violence) ....... 20**

**G. Retaliation ....... 21**

***IV. RELATIONSHIPS WITH STUDENTS POLICY ....... 22***

***V. SPECIAL PROVISIONS FOR STUDENTS, EMPLOYEES AND THIRD PARTIES WHO WORK FOR GRANT FUNDED PROGRAMS ....... 23***

***VI. REPORTING AND DISCUSSING SEXUAL MISCONDUCT ....... 24***
1. Confidential Resources ....... 24
2. Limited Policy Confidential Resource ....... 24
3. Reporting Options ....... 25

***Warning: Please note that this policy addresses issues of sexual violence and uses descriptions and examples of this conduct which can be triggering.***

**A. Immediate Confidential Reporting/Support Options .................................................. 25**
1. Physical Well-Being (Medical Services) – CONFIDENTIAL ............................................................ 25
2. Emotional Well-Being (Counseling Services) – CONFIDENTIAL ..................................................... 26
3. Tufts Chaplaincy – CONFIDENTIAL ........................................................................................... 27

**B. Reporting Options ................................................................................................ 27**
1. Tufts University Police Department – Internal Reporting Option ................................................. 27
2. Office of Equal Opportunity (OEO) – Internal Reporting Option .................................................. 28
3. OEO Liaisons or Sexual Misconduct/Title IX Reporting Liaisons .................................................. 34
4. Deans' Offices – Internal Reporting Options ............................................................................ 34
5. Human Resources – Internal Reporting Option ......................................................................... 36
6. Ethicspoint ............................................................................................................................ 36
7. Community Resources – External Reporting and Support Options .............................................. 36
8. Administrative Agency Resources – External Reporting Options ................................................. 37

***APPENDIX A – SEX CRIME DEFINITIONS .......................................................... 39***

***Warning: Please note that this policy addresses issues of sexual violence and uses descriptions and examples of this conduct which can be triggering.***

## I. POLICY STATEMENT AND SUMMARY

Unlawful discrimination has no place at Tufts University. It violates the University's core values, including its commitment to equal opportunity and inclusion, and will not be tolerated. Sex and gender-based discrimination and harassment are prohibited by Tufts University policy and can constitute violations of state and/or federal law. State and federal law, including Title IX of the 1972 Education Amendments, prohibits sex and gender-based discrimination in all of the University's programs and activities, and Title VII of the 1964 Civil Rights Act, and its state counterpart, M.G.L. c. 151B, prohibits sex and gender-based discrimination in employment. Tufts University policy, the Violence Against Women Act (VAWA), as amended, and other state and federal laws prohibit sexual assault, stalking and relationship violence (including dating and domestic violence). This policy outlines Tufts' community expectations and applies to all members of the Tufts community.

Effective August 14, 2020, Tufts' Title IX Policy will also apply to conduct which meets the definition of sexual harassment as defined in the 2020 Title IX regulations passed by the Department of Education. While the Tufts Title IX policy may apply to conduct similar to that outlined in this Sexual Misconduct policy and, depending on the circumstances, may also apply to conduct that arises under this Sexual Misconduct policy (or other university policies), the Title IX policy is a distinct policy governed by a distinct procedure required by the U.S. Department of Education. Formal complaints of allegations arising exclusively under the Sexual Misconduct Policy will proceed under the Sexual Misconduct Adjudication Process (SMAP) for students and under the Discrimination Complaint Processing Guidelines for employees. Where allegations in a complaint overlap with the Title IX policy the matter will be processed under the Title IX Process (also known as the Sexual Misconduct Adjudication Process with live, recorded cross-examination, or SMAP-X) unless otherwise agreed to by the parties. Following an assessment of the allegations of the complaint conducted at the beginning of the formal process and at the end of any investigative process, the Title IX Coordinator or designee will inform the parties of the procedures applicable to the matter and the reasons therefore. For more information please see Explanation of Informal Process Options and Assessment of Allegations.

**Prohibited Conduct:** Tufts is committed to providing a campus environment free of sex and gender-based discrimination, and sex and gender-based harassment. To that end, Tufts prohibits sexual misconduct, that, under this policy, can include: (1) sex and gender-based discrimination; (2) sexual and sex and gender-based harassment (including a hostile environment based on sex or gender); (3) sexual assault; (4) sexual exploitation; (5) stalking; and (6) relationship violence (including dating and domestic violence). Under Tufts University policy, sexual misconduct can occur in any sex or gender configuration (i.e., between the same sex or different sex or gender) and regardless of actual or perceived sex, gender, gender identity, gender expression, and/or sexual orientation. Tufts also prohibits retaliation.

Sexual misconduct as prohibited by Tufts policy is not limited to the workplace or the educational environment. It can extend beyond University property and could occur at

any University sponsored program, activity, or event regardless of the location. It can occur out of state or country, such as at a conference, off-site project, study abroad, field placement, or at an externship.[1] In addition, there are special provisions for those who receive or administer federal grant money or who work in grant funded programs or with grand funded money such as NIH, NSF, NASA, the UN and USAID. Please see Section V for more information about these standards.

Sexual misconduct can occur between students, employees and third parties such as patients, visitors, vendors, contractors and other community members ("third parties"). Tufts' Sexual Misconduct Policy applies broadly and in many different circumstances. Tufts will consider the effects of the off-campus conduct when evaluating whether there is a hostile environment on campus. More information about what constitutes prohibited conduct can be found under Prohibited Conduct later in this policy.

**University Response to Allegations of Sexual Misconduct:**

The University takes all allegations of sexual misconduct seriously and is committed to providing information, education, resources, supportive measures, and clear direction to Tufts community members to prevent and address such conduct. See Resources and Supports.

Consistent with applicable laws, the University through its Office of Equal Opportunity (OEO) will respond to sexual misconduct that it knows or should know about in order to stop prohibited conduct, prevent the recurrence of any conduct of concern, prevent and/or eliminate any hostile environment, and, where appropriate, address any effects on campus from such prohibited conduct.

Violations of this policy are subject to disciplinary action. Depending on the nature of the violation, disciplinary consequences for violations of this policy may include denial of privileges, disciplinary probation, suspension and expulsion for students, and may include warnings (verbal or written), demotions, suspensions, and termination for employees.

It is the responsibility of OEO to make inquiries into reports of sexual misconduct on behalf of the University. Complaints or allegations of violations of this policy can be filed through the applicable internal procedures and guidelines. The procedure that applies to complaints against students is called the Sexual Misconduct Adjudication Process (SMAP). See SMAP for a copy of the process.

The Discrimination Complaint Process for Employees applies to complaints filed against employees, patients, community members and third parties. OEO will conduct investigations for matters brought under the SMAP and the Discrimination Complaint Process for Employees. All violations of this policy will be decided by the preponderance of the evidence standard (whether it was more likely than not that University policy has been violated by the conduct alleged). Additional information about OEO's adjudication process can be found later in this policy, or at oeo.tufts.edu.

[1] While the federal government has stated that Title IX does not apply outside of a university education program or activity or outside the United States, the University will continue to provide this protection under this Policy and remain consistent with its expectations of conduct even if it may not constitute a separate violation of Title IX.

***Warning: Please note that this policy addresses issues of sexual violence and uses descriptions and examples of this conduct which can be triggering.***

The conduct discussed in this policy may also constitute violations of the law, to which other laws and regulations may apply beyond the scope of this policy and Tufts' disciplinary measures. Criminal definitions under state and federal law for some of the conduct described under this policy such as sexual assault, relationship violence (including dating and domestic violence) and stalking can be found in Appendix A to this policy. Tufts University will abide by court ordered restraining orders and orders of protection and will assist individuals seeking these or other law enforcement options. Tufts will honor a complainant's decision either to pursue a law enforcement remedy or to decline to pursue that avenue of remedy but is required to inform each complainant[2] of their options. Please see Explanation of Informal Process Options.

Information about how to file criminal and disciplinary claims is detailed later in this policy.

*Supportive Measures:* Tufts is committed to assisting complainants, respondents and witnesses through many resources available to support them. Information about those resources can be found at Resources and Supports and on the Tufts' Sexual Misconduct Resources website.

The University encourages those who wish to receive confidential support services regarding sexual misconduct to seek assistance from: (1) the University's Counseling Centers (for students) or any other mental health services provider; (2) the University Health Services (for students) or any other medical care provider; (3) the Student Advisory and Health Administration Office (for Boston/Grafton students); or (4) any Chaplain in the Tufts' Office of the Chaplaincy or any other member of the chaplaincy. The Employee Assistance Program (EAP) provides confidential counseling for employees and employees are free to seek confidential assistance from other health or mental health services providers as well as the University Chaplaincy or any off campus religious or spiritual resource. Additional resources with different confidentiality and reporting requirements are listed later in this document or at Resources and Supports.

There are options to address sexual misconduct, both through our disciplinary process and/or through the legal system. Complainants can use any or all of these options simultaneously to address sexual misconduct. The University affirms the right of complainants to decide whether they wish to be involved in any process to address sexual misconduct — or not. For more information see Explanation of Informal Process Options or for more information about reporting options please go to oeo.tufts.edu/reporting/.

Should the conduct at issue pose a threat to campus safety (which includes but is not limited to threats of further violence, the use of weapons and/or repeat offenders), the University must take action regardless of whether the complainant wishes to proceed with their individual complaint. In these circumstances, the University my also need to activate its emergency removal procedures for respondent students or its administrative leave procedures for respondent employees. OEO, in consultation with others such as

[2] This policy uses the terms "complainant" and "respondent" to describe the aggrieved individual and the accused in a sexual misconduct matter, respectively. However, a complainant in any case may self-identify as "victim" or "survivor" and a respondent may self-identify as the "accused."

the Tufts University Police Department (TUPD) and the corresponding dean or supervisor will evaluate and decide whether the emergency removal procedures are warranted under the circumstances.

Consistent with applicable laws, the University will provide supportive measures to complainants and respondents in response to sexual misconduct in order to stop prohibited conduct, prevent the recurrence of any conduct of concern, prevent and/or eliminate any hostile environment, and, where appropriate, address any effects on campus from such prohibited conduct. Please see Resources and Supports.

Supportive measures are available to both parties regardless of whether disciplinary or criminal claims are pursued. Various available and appropriate supportive measures include a variety of non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to the complainant or the respondent before or after the filing of formal complaint or where not formal complaint has been filed. These supportive measures are designed to restore or preserve equal access to the University's education program or activity without unreasonably burdening the parties, including measures designed to protect the safety of all parties or the University's educational environment or deter sexual misconduct. The University will also prioritize confidentiality while implementing the measures as effectively as possible. Some of these supportive measures include but are not limited to: health and counseling services, bilateral mutual No Contact Orders, mutual no trespass orders, safety planning, schedule and housing changes, academic supports or adjustments, and information about financial aid and visa/immigration related issues.

**Role of the Title IX Coordinator**

The Tufts University Title IX Coordinator is Jill Zellmer, MSW, Jill.Zellmer@tufts.edu 617.627.3298). The Title IX Coordinator and designated Deputy Title IX Coordinator, Pamela Ring (Pam.Ring@tufts.edu) are generally responsible for the implementation of Title IX at Tufts (as embodied in the Sexual Misconduct and Title IX policies) and for coordinating the institution's compliance with Title IX in areas covered by the implementing regulations, including the prevention of sex discrimination. She or her designee ensures the implementation of supportive measures and can provide information regarding available options in consultation with other relevant Tufts administrators (e.g., deans of students, residential life administrators, etc.). The Title IX Coordinator generally monitors, supervises and oversees delegated Title IX functions, including identifying potential patterns of harassment and reviewing all investigative reports before they are final to ensure the investigation was sufficient, appropriate, impartial and in compliance with the relevant policies and procedures. In addition, once an investigator or adjudication panel arrives at a tentative or final outcome, it is the Title IX Coordinator's responsibility to determine whether the proposed findings address and resolve the complaint(s) and whether any additional procedural steps need to be taken and/or remedies provided. At all times, the Title IX Coordinator remains responsible for the administration of the University's policies

under Title IX and is empowered to exercise her discretion and take all necessary steps to ensure the fulfillment of fair and equitable processes and case resolutions.

**Prohibition Against Retaliation:** Retaliation against anyone who makes a good faith report or complaint of an incident of sexual misconduct, or in any way participates in an inquiry or investigation of sexual misconduct under this policy is strictly prohibited. A person engaged in retaliatory conduct will be subject to disciplinary action by the University. The University will also provide supportive measures in response to retaliation-related concerns in order to stop prohibited conduct, prevent its recurrence, prevent and/or eliminate any hostile environment, and, where appropriate, address any effects on campus from such conduct. Conduct prohibited by this section is further described in this policy below.

**Reporting Obligations of Responsible Employees:** All employees of the University - with a few limited exceptions - are considered "Responsible Employees" under this policy and as a result are required to promptly report allegations of sexual misconduct that they observe or learn about to the Title IX Coordinator, Jill Zellmer (oeo@tufts.edu or call 617.627.3298) or to anyone on the OEO Liaison list. The Title IX Coordinator is charged with the responsibility of coordinating Tufts' efforts to comply with its obligations under this policy and the Title IX Policy, including addressing complaints of sexual misconduct, coordinating investigations and providing appropriate interim measures for the Tufts community.

Although Responsible Employees are required to report conduct under this policy to OEO, they will otherwise maintain the privacy of the information related to the matter reported.

Responsible Employees may also report such conduct online through the Ethicspoint reporting portal, providing all known details of the situation: tufts-oeo.ethicspoint.com All Responsible Employees are required to report any incident of sexual misconduct, even if the person(s) concerned about or affected by the misconduct is unsure about pursuing a disciplinary complaint. Reported allegation(s) will be reviewed by OEO staff who will assess the report and consult with the complainant. Responsible employees who knew about but did not report allegations of sexual misconduct may be subject to disciplinary action.

Only employees of Tufts' Counseling and Mental Health Services, Tufts' Student Advisory and Health Administration, Tufts' Health Service, Tufts' Chaplains and the EAP, all of whom have legally defined confidentiality privileges, are exempt from these reporting requirements. Certain employees of the Tufts University Center for Awareness, Resources and Education (CARE) do not have statutory confidentiality but are not responsible employees under this policy and have limited "policy confidentiality" privileges; as such, the CARE staff are still required to report non-identifying information to TUPD about criminal conduct for purposes of the University's Clery Act reporting requirements. Information about confidential and other reporting requirements and supporting options are listed later in this policy.

***Warning: Please note that this policy addresses issues of sexual violence and uses descriptions and examples of this conduct which can be triggering.***

## II. IMPORTANT DEFINITIONS

### A. Consent

To be effective, consent must be an informed, deliberate and voluntary decision to engage in mutually acceptable sexual activity. Consent is an affirmative process. It is the responsibility of the person who wants to engage in sexual activity to make sure that they have received consent from any other person(s) involved. If an individual initiating sexual activity is not sure if they have received consent, they have an obligation to seek additional clarification. Failure to do so could violate this policy and lead to disciplinary action. Consent cannot be based on assumptions. Tufts policy always requires that individuals obtain consent before engaging in sexual activity.

#### 1. What is consent?

Consent occurs when individuals willingly, unambiguously and knowingly agree to engage in sexual activity in a clear, specific and affirmatively communicated way that is understood by all of the parties involved.

Consent is active not passive. Signals of consent must be part of a mutual and ongoing process, offered freely and knowingly. Consent can be given by words or actions as long as those words or actions create clear, specific, mutually understandable permission regarding the conditions of sexual activity. Relying solely on non-verbal communication can lead to misunderstandings and harmful consequences for all of the parties involved because this form of communication may be unclear. Individuals should be able to clearly articulate why and how they knew that they had received consent and what they considered to be indications of consent before they engaged in sexual activity.

It is important to remember:

- Consent to one sexual act does not constitute or imply consent to another act
- Previous consent cannot imply consent to future sexual acts.
- Consent is always required and cannot be assumed based on the parties' relationship status or sexual history together
- Consent can be withdrawn at any time before or during sexual activity by either party

Example[3] of Consent:

- Hanne wants to engage in oral sex with Nika. Hanne asks Nika if it is okay to perform oral sex and Nika says yes.

[3] NOTE ON EXAMPLES: The examples used throughout this policy are based on hypothetical situations developed in coordination with students and employees to illustrate various concepts. Any resemblance to real persons or situations is purely coincidental. Individuals reading these examples should understand that sexual misconduct cases involve more complex sets of facts and must be reviewed on a case-by-case basis. Further, these examples are meant to be demonstrative only and do not change the definitions set forth in the policy.

### 2. What is Not Consent?

Consent may not be inferred from silence, passivity or a lack of objection. Individuals who do not physically oppose or verbally refuse sex are not necessarily giving consent. The absence of a negative response, such as silence or a failure to resist does not equal consent. It is the responsibility of the person initiating each stage of sexual activity to make sure that they have received consent at each of those stages from all person(s) engaged in the sexual activity. If a person is not sure, they have an obligation to seek additional information to make sure that they have received consent. However, gaining 'consent' only after persistently badgering or pressuring someone, is not consistent with affirmative consent and may constitute coercion or duress which is prohibited under the SMP. The use of alcohol or other substances does not relieve an individual of their obligation to obtain consent before initiating and/or engaging in sexual activity (see Consent and the Use of Alcohol or Drugs below for more information).

Some behaviors and comments that do not indicate affirmative consent include (but are not limited to):

- Silence
- "I don't know."
- "Maybe"
- A head shake
- Lack of objection
- Not fighting back
- Ambiguous responses such as "uh huh" or "mm hmm" without more
- A verbal "no," even if it may sound indecisive or insincere.

If an individual receives an unclear response, they have an obligation to get additional information before engaging in this sexual activity. Consent must be received for each individual sexual act that an individual wishes to engage in with another person(s). Without knowledge of what is happening, such as a state of incapacity, an individual cannot consent.

Consent can never be obtained by use of force (as defined in Section C. Force below), which includes physical force, violence, threats, intimidation, abuse of power/authority, coercion and/or duress.

*Example of an Absence of Consent:*

- (Hanne and Nika continued). After Hanne performs consensual oral sex with Nika, Hanne gets a condom and puts it on - without saying anything to Nika - and penetrates Nika.

### 3. Consent Can Never Be Given By

a. Someone who is incapacitated. A person can be incapacitated through the use of drugs, alcohol or any other intoxicating substance, or when they are unconscious, asleep or otherwise unaware the sexual activity is occurring. It is a violation of the Sexual Misconduct Policy to engage in sexual activity with

someone an individual knew or should have known was incapacitated. See the definition of incapacity (Section B. Incapacity below) for more information.

b. Someone under the legal age of consent. The legal age of consent in the Commonwealth of Massachusetts is sixteen (16). Sexual activity with a person who is under the age of consent (16) is an automatic or *per se* violation of the Sexual Misconduct Policy, regardless of whether or not the person under the age of 16 was a willing participant in the conduct. Mistaken belief in the age of the child is not a defense.

c. Someone who is mentally disabled or cognitively impaired. Certain mental disabilities or cognitive impairments can cause a person to be unable to knowingly consent to sexual activity. It is a violation of the Sexual Misconduct Policy to engage in sexual activity with a person whose mental disability or cognitive impairment renders them incapable of giving consent and the disability/impairment is known or should have been known to the non-disabled sexual partner. Under these circumstances, the conduct is non-consensual regardless of whether or not the person appeared to be a willing participant.

### 4. Consent and the Use of Alcohol or Drugs

Engaging in sexual activity while under the influence of alcohol or drugs can impair an individual's ability to make sure they have received consent. A person who has consumed alcohol and/or drugs still has a responsibility to obtain ongoing consent for any sexual activity with another person(s).

The use of alcohol and/or other drugs by the person initiating sexual activity will never be an excuse for failing to obtain consent. A complainant that was using alcohol and/or drugs is never responsible for being subjected to sexual misconduct.

The parties should be assured that the focus in matters of sexual misconduct is always on the reported behavior, not on whether the parties were using alcohol or drugs, or not adhering to other relevant community expectations at the time. To the extent allowed by applicable laws and University policy, Tufts will exercise leniency regarding secondary conduct violations (e.g. underage drinking/drug use that does not endanger the safety of other individuals) and these issues will not be subjected to adjudication against a complainant as part of the Sexual Misconduct Adjudication Process (SMAP) or the Title IX SMAP-X Process for students or employees.

## B. Incapacity

Incapacity is a state in which someone cannot make a decision because they lack the ability to fully understand what is happening and therefore cannot consent even if they appear to be a willing participant. An individual who is intoxicated may be able to

consent to sexual activity. However, when an individual passes from intoxication to a state of incapacitation, they no longer have the ability to give consent under this policy. When incapacitated, an individual moves from being simply drunk and/or under the influence of drugs and/or alcohol and becomes physically and/or mentally debilitated due to their drug or alcohol consumption. Individuals can also be incapacitated because they are unconscious or asleep.

It is important to remember that an individual's response to alcohol, medication and other substances can vary over time and circumstances. It is often difficult to tell when someone has moved from being intoxicated and become incapacitated. Therefore, engaging in sexual activity while under the influence of alcohol and/or other substances can impair an individual's ability to assess whether someone has moved from intoxication to incapacitation. If there is any question or doubt about whether an individual has become incapacitated, it is best not to engage in sexual activity with them.

Some indications of incapacity include (but are not limited to):

- Slurred speech or other difficulty communicating
- Difficulty walking or standing
- Vomiting
- Glassy or bloodshot eyes;
- Unable to keep eyes open
- Unusual behavior
- Unconsciousness
- Confusion or lack of understanding
- Disorientation to place, time and/or location.

These signs alone do not necessarily indicate incapacitation. An individual can be incapacitated without displaying any of these signs. For instance, in some circumstances, a person in a blackout state can appear to be conscious when they are actually incapacitated and unable to consent.

Engaging in sexual activity with someone a person knew or should have known was incapacitated is a violation of this policy regardless of whether the person appeared to be a willing participant. It is the responsibility of the individual who wants to engage in sexual activity to make sure that the other individual(s) involved are able to consent. Failure to do so could lead to disciplinary and/or legal action.

*Examples of an Absence of Consent Due to Incapacity:*

- *Marin and Rory are hanging out and Marin falls asleep on the couch. Marin wakes up hours later and finds Rory having sex with him.*
- *Wynne and Aja are drinking together as they have for the past few weekends. Wynne sees that Aja is intoxicated. Wynne knows that this is more alcohol than Aja has consumed in the past. Aja is having difficulty walking, is slurring and has vomited. Wynne then begins to engage in sexual activity with Aja.*
- *Carl is having a medical procedure that requires sedation. A student provider working on his case likes Carl and asks him out, seeking to engage in sexual activity as Carl is coming out of sedation.*

==========================

***When in Doubt, Don't!***

==========================

## C. Types of Force

Force is not limited to physical violence, but also includes threats of physical violence and physical intimidation. The presence of force may negate any indications of consent.

### 1. Physical Force, Violence

Physical force is the use of power, violence or strength upon another person's body. An individual's use of physical force or violence, or threat of physical force or violence to make another person participate in or perform a sexual activity they might not have otherwise agreed to, or did not want to engage in, is a violation of this Sexual Misconduct Policy.

Physical force and violence includes (but is not limited to):

- Restraining someone
- Laying on top of someone
- Not allowing someone to leave
- Imposing on someone physically
- Using a weapon
- The presence or suggestion of a weapon
- Hitting or pushing someone.

*Example of an Absence of Consent Due to the Use of Force*

> *Jared and Maya return to his room after a party. They consensually begin kissing. Jared says he wants to have sex and Maya says nothing. When Maya tries to get off the bed, Jared restrains Maya with his body weight and penetrates Maya.*

### 2. Threats of Physical Violence

A threat often occurs when someone says or implies that there will be negative physical consequences from failing to acquiesce to or comply with sexual activity. It is a violation of this policy if an individual uses threats to make another person participate in or perform a sexual activity that they might not have agreed to engage otherwise.

This behavior can include (but is not limited to) threats to:

- Inflict harm or injury
- The presence or suggestion of a weapon
- Hurt or kill themselves or someone else
- Expose some secret or embarrassing information
- Hurt someone's reputation

- Inflict negative social consequences
- Commit another hostile action in retribution for something done or not done

Threats can be implied, veiled and/or non-verbal.

*Example of an Absence of Consent Due to Use of Threat*

- *Ian confides in Sean that he has recently started self-identifying as queer, but most people do not know. Sean and Ian start kissing. Sean wants Ian to perform oral sex, but Ian says he is not interested in that. Sean threatens to "out" Ian on Facebook if he does not do it. Ian submits to Sean sexually because he is afraid of the threat of being "outed."*

### 3. Intimidation or Abuse of Power/Authority

Intimidation or abuse of power/authority occurs when individuals use their real or perceived authority to influence other people to acquiesce or submit to sexual activity. Intimidation happens through a real or perceived display of superior wealth, status or power that someone uses to make another do what they want them to do. Real or perceived power can come from things such as class, social status, a teaching position, a mentorship, membership in a team or group and/or an individual's status within a team or group. It implies a power imbalance between the parties. When an individual uses this power/authority/control to influence another to participate in or perform a sexual activity that they might not have agreed to engage in otherwise, they have used force. Tufts has a Relationships with Students Policy which prohibits relationships between those in authority and their subordinates, including teachers/professors and their students, because such relationships can create an automatic or *per se* power imbalance. Under certain circumstances a violation of the Sexual Misconduct Policy may also apply.

This behavior can include (but is not limited to) threats to:

- Expose some secret or embarrassing information
- Hurt someone's reputation
- Inflict negative social consequences
- Commit a hostile action in retribution for something done or not done.

*Examples of an Absence of Consent Due to Intimidation or Abuse of Power/Authority*

- *Rian is a student who is working on their thesis with a faculty advisor, Falon. Rian is struggling and comes to Falon for academic support. Falon suggests to Rian that they should get together off-campus to discuss Rian's work. When Rian hesitates, Falon puts an arm around Rian and implies that the only way to save Rian's thesis is for Rian to agree to engage in sexual conduct with Falon. Rian is afraid and submits to sexual conduct with Falon.*

***Warning: Please note that this policy addresses issues of sexual violence and uses descriptions and examples of this conduct which can be triggering.***

### 4. Coercion or Duress

Under this policy, coercion and duress occur when continual pressure is used to compel someone to engage in sexual activity. The use of this pressure violates the free will of another. Coercion and/or duress can be pressuring an individual into sexual activity that they did not and/or would not have wanted to participate in but for the coercion and/or duress.

Coercion or duress can also be emotional or verbal and often involves persistently badgering someone. Coercion can be a process that happens over a period of time. In assessing whether coercion was used, the frequency, duration and intensity of the pressure applied will be taken into consideration.

*Example of an Absence of Consent Due to Coercion or Duress*

> *Erin recently lost a parent and has had a hard time. Dale comes over to watch a movie with Erin. When Erin starts crying, Dale hugs Erin. Erin and Dale start kissing and touching one another. Erin wants to stop but Dale says, "You've made me so hot, how can you stop now?" When Erin tells Dale to stop because Erin wants to be alone, Dale asks what kind of a friend Erin is to leave like this when Dale came over to help Erin. Erin is confused and emotionally vulnerable. Dale pressures Erin throughout the movie reminding Erin that Dale can end Erin's social life and intimidatingly implies that Erin owes Dale sex for Dale's support. Erin concedes to Dale's coercion and has sex with Dale.*

## III. DEFINING AND RECOGNIZING SEXUAL MISCONDUCT

Sexual Misconduct is a broad term used in this policy to encompass unwelcome or unwanted sex or gender-based conduct and/or behavior of a sexual nature that is prohibited by Tufts University and may also be prohibited by federal and state law, including Title IX. The term *sexual misconduct* includes but is not limited to prohibited behaviors often described as sex and gender discrimination, sexual harassment, sexual assault and rape, sexual exploitation, stalking and relationship violence (including dating and domestic violence). It can be a violation of this policy to commit these acts or to attempt to commit them. Also, as previously described, some sexual misconduct under this policy could be a violation of applicable federal and state criminal and/or civil law (including Title IX) and other University policies (including the University's Title IX Policy and Non-Discrimination Policy). Sexual misconduct can occur in any sex or gender configuration (i.e. between those of the same sex/gender or a different sex/gender) and regardless of actual or perceived sex, gender, gender identity, gender expression and/or sexual orientation.

Sexual misconduct may encompass many different forms and behaviors, including but not limited to, the following categories:

A. Sex and/or Gender Discrimination
B. Sexual and/or Sex-/Gender-Based Harassment
C. Sexual Assault

1. Non-Consensual Sexual Contact
2. Forced Sexual Contact
3. Non-Consensual Sexual Intercourse
4. Forced Sexual Intercourse

D. Sexual Exploitation
E. Stalking
F. Relationship Violence (including dating and domestic violence)
G. Retaliation

## A. Sex- and/or Gender-Based Discrimination

Sexual misconduct is, in some instances, a form of sex and/or gender discrimination and sex and/or gender-based harassment. However, sex and gender discrimination and harassment that is not sexual in nature may also be prohibited by other Tufts policies. For instance, Tufts' Non-Discrimination Policy prohibits the unequal treatment of an individual (or group) based on sex or gender or sex/gender-based harassment — even when the conduct is not sexual in nature. The Non-Discrimination Policy also prohibits sex or gender discrimination resulting from the application of a neutral policy or procedures.

For more information on sex and gender discrimination, please see Tufts' Non-Discrimination Policy and the Tufts' Non-Discrimination Statement. Allegations of sex or gender-based discrimination that are not of a sexual nature and do not arise under the Sexual Misconduct Policy are covered by the University's Non-Discrimination Policy, and associated procedures. Tufts Non-Discrimination Policy also covers other forms of discrimination and harassment based on other protected classes (e.g., race, national origin, age, disability) which can be interrelated to claims of sex or gender-based discrimination or harassment.

*Example of Sex/Gender Discrimination*

- *Carly has noticed that the professor in his lab class refers to male students as "sexy," "abs" and "muscles" and other similar names. However, the professor always refers to females by their first names.*

## B. Sexual or Sex- and/or Gender-Based Harassment

Tufts policy defines sexual harassment as a form of sex and gender discrimination that involves unwelcome or unwanted conduct of a sexual nature. It can include unwelcome or unwanted sexual advances, requests for sexual favors and other physical or verbal conduct of a sexual nature. Sexual harassment can include conduct directed at a person because of their real or perceived gender. Similarly, sex and/or gender-based harassment that is not sexual in nature is prohibited by this policy, and the University's Non-Discrimination Policy, and can also include conduct directed at a person because of their real or perceived sex and/or gender. This conduct violates Tufts policy when:

- It is made a condition of academic status or employment; or

- Refusing or submitting to the conduct is used as a basis for academic or employment decisions; or
- The conduct has the purpose or effect of unreasonably interfering with an individual's work or academic performance.

Sexual and sex and/or gender-based harassment has the purpose or effect of unreasonably interfering with an individual's work or academic performance if, for example, it is sufficiently serious, pervasive and/or persistent as to create an intimidating, hostile, humiliating, demeaning, discriminatory or sexually offensive working, academic, residential or social environment under both an objective (i.e. a reasonable person's view) and subjective (the complainant's view) standard.

Some examples of unwelcome or unwanted conduct under Tufts policy that could constitute sexual and/or sex and/or gender-based harassment include (but are not limited to):

- Sexual propositions
- Sexual advances – with or without touching
- Sexual jokes or describing sexual conduct
- Comments on an individual's body and/or appearance
- Comments about sexual activity, experiences, deficiencies or prowess
- Displaying sexually suggestive objects, pictures, cartoons and other images
- Sexual gestures, leering, whistling or innuendos of a sexual nature
- Unwelcome or unwanted contact – touching, hugging, brushing against a person's body, impeding or blocking movement
- Hostile or intimidating conduct such as yelling or screaming at an individual based on sex/gender
- Sexist statements and behavior
- Taunting slurs or other hostility for failing to conform to expected notions of masculinity or femininity
- Persistent requests for dates or sexual favors/activities
- Inappropriate gifts or communications (letters, telephone calls, emails, texts)
- Other sexual misconduct such as domestic or intimate partner/relationship violence and sexual assault (covered elsewhere in this policy)
- Use of pet names, nicknames or terms of endearment
- Intentionally and/or repeatedly refusing to adhere to a person's expressed and preferred gender pronoun or otherwise intentionally and/or repeatedly disrespecting the same

Sexual and/or sex and gender-based harassment can occur between and/or among students, staff, faculty, patient and/or third parties. Sexual and/or sex and gender-based harassment can occur between people of unequal power or between peers. A complainant does not have to be the direct recipient of the conduct; anyone affected and/or offended by the conduct may file a complaint. A complainant does not have to inform the respondent that the conduct is unwelcome, especially if it is not safe to do so in the moment but can report the conduct to OEO, HR, a Dean or a colleague (most of whom are obligated to report to OEO). Sexual and/or sex and gender-based harassment neither restricts itself to the workplace or the educational environment nor

***Warning: Please note that this policy addresses issues of sexual violence and uses descriptions and examples of this conduct which can be triggering.***

must it take place on University property. Sex and gender-based discrimination and harassment that is not sexual in nature is prohibited under Tufts' Non-Discrimination Policy. OEO is also responsible for investigating and addressing concerns raised under Tufts' Non-Discrimination Policy. For more information on sex and gender discrimination, please see Tufts' Non-Discrimination Policy and the Tufts' Non-Discrimination Statement.

*Examples of Sexual and Sex and/or Gender-based Harassment*

- *Toby is an active participant in class. Recently the other students have begun ranking people who speak in class based on how "hot" they are and Toby is aware that he is being rated based on his appearance. Toby no longer feels comfortable participating in class.*
- *Baden notices that every time she passes Dane's office (her supervisor), Dane is laughing with another colleague about something on a social media site. When Baden asks what is so funny, the supervisor shows Baden a site filled with sexually explicit images.*
- *Kayden works at the gym. One of the weekly delivery drivers who does not work for Tufts has started leering at Kayden during deliveries. The delivery driver has made some sexually suggestive comments to Kayden that make Kayden or other passersby uncomfortable.*

Effective August 14, 2020, Tufts will be required to recognize the definition of sexual harassment included in the U.S. Department of Education's new Title IX regulations, and it will do so through the University's new Title IX Policy and corresponding Title IX SMAP-X Process. While, as described earlier in this document, Tufts' Sexual Misconduct Policy will still apply and outlines the institution's expectations regarding the general standards of conduct for all its community members with broader definitions and a much broader geographic and jurisdictional scope than that outlined in the Title IX Policy, the University will adhere to the Department of Education's requirements in any case where the allegations of sexual harassment meet its new definition.

## C. Sexual Assault

Sexual assault under Tufts policy is the act of committing unwelcome or unwanted physical contact of a sexual nature toward someone else. There are many types of sexual assault, including rape. Such contact is unwelcome or unwanted when it occurs (1) without the consent of the other individual(s) involved (as defined in Section II-A above), (2) when the other individual(s) involved is incapacitated or otherwise incapable of giving consent (as defined in Section II-B above), and (3) it may occurs with the use of force (as defined in Section II-C above).

Sexual assault can be committed by anyone including an acquaintance or a stranger. An acquaintance may include close friends, intimate partners, coworkers, classmates, friends of friends or may be someone you just met. The parties involved can be of any actual or perceived sex/gender, gender identity, gender expression and/or sexual orientation. Under this policy, sexual assault includes, but is not limited to the following: (1) non-consensual

sexual contact; (2) forced sexual contact; (3) non-consensual sexual penetration; and (4) forced sexual penetration. These terms are discussed in further detail below.

1. **Non-Consensual Sexual Contact** is
   - Any intentional sexual touching, however slight,
   - By a person upon another person(s),
   - Without consent or upon an individual who is incapacitated or otherwise incapable of giving consent (as defined in Section II-B above).

   Sexual contact includes, but is not limited to: touching of a person's intimate parts, such as genitalia, groin, breast, buttocks, mouth, and/or clothing covering those parts; touching a person with one's own intimate parts; making a person touch you or another; or any intentional bodily contact in a sexual manner, including but not limited to, unwelcome or unwanted hugging, even if that contact does not involve intimate body parts. If this contact occurs with the absence of consent, it is a violation of this policy.

   *Examples of Non-Consensual Sexual Contact*

   - *Jesse is working at the register and Prya walks by, grabbing Jesse by the buttocks*
   - *Alex is sleeping and wakes to find Avery touching his genitals*
   - *Cal is a computer technician and is called to various staff offices to troubleshoot computer problems. Every time Cal is called to a particular supervisor's office, the supervisor makes a comment about Cal's body and does not move out of the way for Cal to troubleshoot the computer problem. Even when Cal asks the supervisor to move, the supervisor moves only slightly. When Cal tries to move past, the supervisor pushes his body into Cal's.*
   - *Damian is a patient under sedation and wakes to find a student provider with their hands down his pants.*

2. **Forced Sexual Contact** is
   - Any intentional sexual touching, however slight
   - By a person upon another person(s)
   - Committed against the will of another or by force (as defined in Section II-C above)

   Sexual contact includes but is not limited to: touching of another person's private parts, such as genitalia, groin, breast, buttocks, mouth, and/or clothing covering those parts; touching a person with one's own intimate parts; making a person touch you or another; or any intentional bodily contact in a sexual manner, including but not limited to, unwelcome or unwanted hugging, even if that contact does not involve intimate body parts. Force is not limited to physical violence but also includes threats, intimidation, abuse of power, coercion and duress, or any combination of those behaviors.

***Warning: Please note that this policy addresses issues of sexual violence and uses descriptions and examples of this conduct which can be triggering.***

*Examples of Forced Sexual Contact*

- *Ellery was attending a TA's office hours when the TA unexpectedly grabbed and pulled Ellery into a hug. The TA would not let go when Ellery asked not to be hugged or touched.*
- *Jens is at a party. Skye pushes Jens onto the couch and shoves his hand into Jens' pants.*

3. **Non-Consensual Sexual Intercourse** is
   - Any sexual intercourse or penetration (anal, oral or vaginal), however slight
   - With any object or body part
   - By a person upon another person(s)
   - Without consent or upon a person unable to consent (as defined in Sections II-A and II-B above)

Sexual intercourse includes (but is not limited to): penetration (oral, anal or vaginal), however slight with any object or body part, including (but not limited to) fingers, tongue and/or penis; or making someone penetrate another person(s). This includes but is not limited to penetration of a bodily opening or cavity and performing/receiving oral copulation (vaginal, anal or penile).

*Example of Non-Consensual Sexual Intercourse:*

- *Ali and Tori are dating but had not previously engaged in sexual conduct together. Then one evening Ali asks Tori if they can kiss. The two kiss and begin to touch each other's bodies. Without communication, Ali penetrates Tori sexually, assuming Ali is in agreement.*

4. **Forced Sexual Intercourse** is
   - Sexual intercourse or penetration (anal, oral or vaginal), however slight
   - With any object or body part
   - By a person upon another person(s)
   - Committed against the will of another or by force (as defined in Section II-C above)

Sexual intercourse or penetration includes (but is not limited to): penetration (oral, anal or vaginal) with any object or body part, including (but not limited to) fingers, tongue and/or penis, or making someone penetrate another person(s). This includes but is not limited to penetration of a bodily opening or cavity and performing/receiving oral copulation (vaginal, anal or penile). Force should never be used to make someone participate in or submit to sexual activity. Force is not limited to physical violence, and also includes threats, intimidation, abuse of power, coercion and duress, or any combination of those behaviors.

*Examples of Forced Sexual Intercourse*

- *Kai and Kyle have been kissing in Kai's room. Kai asks Kyle to leave because he doesn't want to have sex. Kyle won't leave Kais' room and stands by the door, threatening to tell everyone Kai's secrets about his sexual past unless Kai*

***Warning: Please note that this policy addresses issues of sexual violence and uses descriptions and examples of this conduct which can be triggering.***

*engages in sexual activity. Kyle then removes Kai's clothing and penetrates Kai against Kai's will.*

## D. Sexual Exploitation

Tufts policy defines sexual exploitation as conduct that occurs when a person(s) takes non-consensual sexual advantage of another, for any purpose. Sexual exploitation can take many forms including those noted below. However, sexual exploitation may go beyond just the behavior listed here. If a person believes that they may have experienced something that could be considered sexual exploitation, they are encouraged to report that conduct.

### 1. Inducing Intoxication/Incapacitation for the Purpose of Sexual Activity

Providing drugs, alcohol or other substances to a person(s) with or without their knowledge, with the intent to impair their ability to withhold consent or their ability to knowingly consent to sexual contact or intercourse (see Section II-A 1 & 2) is a violation of this policy. This type of conduct constitutes sexual exploitation regardless of whether sexual contact actually occurred. If sexual contact does occur, it may also be a violation of other sections of this policy, including sexual assault.

*Example of Inducing Intoxication/Incapacitation for the Purpose of Sexual Activity*

- *Andre and Kayce are at a party and Andre offers Kayce punch to drink. Andre does not tell Kayce that the punch is spiked with alcohol, and Kayce does not seem to realize how much alcohol is in the drink. Kayce becomes intoxicated but Andre continues to encourage Kayce to drink. Andre intends to engage in sexual contact with Kayce once Kayce has had enough to drink and has told friends that he will "get together" with Kayce "one way or another."*

### 2. Photographing or Video/Audio Taping of Sexual Activity

Photographing or taping someone (via audio, video or otherwise) involved in sexual contact, or in any state of undress, without their consent (as defined in Section II-A above) constitutes sexual exploitation and is a violation of this policy. The act of taking those images/recordings without consent is one form of sexual exploitation. Even if a person consented to the sexual contact or being in a state of undress, photographing or taping someone without consent goes beyond the scope of that original consent. Remember, consent to one act or behavior does not imply consent to other activities.

The act of sharing images such as photographs or video/audio of someone involved in sexual contact or in a state of undress, without their consent, constitutes an *additional* act of sexual exploitation that is separate from the act of taking the images/audio. This additional act of sexual exploitation can be committed by anyone in possession of the images, even if that individual was not responsible for the creation of the original images and was not engaged in the recorded sexual contact. Sharing those images or audio can be done by digitally forwarding and/or posting copies of the materials or by simply showing someone

else those images without relinquishing possession. If an individual is interested in sharing these types of photographs or video/audio, they must obtain the consent of all persons involved in those images/recordings before showing or disseminating the images or recordings.

If a person consented to the taking of the images/recordings, but now has concerns that they may be shared without their consent, they may contact their Dean's office and/or the Title IX Coordinator and Executive Director of the OEO, Jill Zellmer (617.627.3298 or jill.zellmer@tufts.edu) to discuss options available to prevent the disclosure of this material.

*Examples of Audio and Video Based Sexual Exploitation*

- *Camryn fell asleep naked one night. Yas took pictures of Camryn while he was asleep and without his consent.*
- *Lee told Val it was okay to videotape them having sex. Lee also told Val it was okay to show the video to their one suitemate. Val showed the video to everyone on the floor without Lee's consent.*
- *Moira gives Vian an audio recording of sexual activity between Moira and another student employee, Dacey. Dacey consents to sharing this recording with Vian. Vian then posts the recording on Facebook asking people to "guess who this is?"*

### 3. Voyeurism

Tufts policy defines voyeurism as the act of intentionally observing, spying on or listening to a person(s) involved in sexual contact or in any state of undress, without their consent. Voyeurism also occurs when an individual allows others to observe this behavior without the consent of all the person(s) involved.

*Examples of Voyeurism*

- *Omar brings Gloria to his room to hook up. Gloria does not know that Omar has concealed his friends, Liam and Foster, in the closet in his room. Liam and Foster watch through a crack in the door as Omar and Gloria engage in consensual sexual contact.*
- *Avery and Sam realize that the people who live in a certain residence hall rarely draw their shades at night. Avery and Sam take up station in a tree and observe many students in various stages of undress.*

### 4. Indecent Exposure

Under Tufts policy, indecent exposure is defined as exposing one's intimate parts, such as genitalia, groin, breast and/or buttocks to someone without their consent. This behavior is the deliberate showing of parts of the body and may, but does not necessarily have to, include a sexual act. Engaging in sexual activity in public, witnessed by a non-consenting person(s), is also a form of indecent exposure under this policy.

*Example of Indecent Exposure*

- *Eli becomes drunk at a work party and drops his pants, exposing his buttocks to co-workers.*

## E. Stalking

Stalking is prohibited under this policy when the conduct involves a Tufts student, staff, faculty and/or other community member regardless of sex or gender.

Under Tufts policy, stalking is defined as persistent, unwanted or unwelcome and repeated course of conduct that would cause a reasonable person to become fearful for the person's safety or the safety of another or suffer substantial emotional distress. A "reasonable person" means a reasonable person under similar circumstances and with similar identities to the complainant. Stalking includes the concept of "cyber stalking," a particular form of stalking that may be over an electronic medium such as the internet, social networks, blogs, cell phones, texts or other similar devices. Such modes of contact may be used to pursue or harass someone when it is unsolicited, unwelcome and/or unwanted conduct from the stalker. Examples of stalking include, but are not limited to, the following unwelcome or unwanted conduct.

- Following a person(s)
- Appearing at a person's home, work or class
- Making frequent phone calls, emails, texts etc. to a person(s)
- Leaving written messages or objects for a person(s)
- Vandalizing a person's property

Anyone can be stalked, regardless of sex or gender. While a few targets of stalking are selected at random, most individuals who are stalked know their stalker and have usually had some type of interactions or relationship with them. A stalker can be an intimate partner or former partner, classmate, roommate, a teacher, professor, co-worker, or any acquaintance or a stranger. An individual can be stalked for several days or many years. The stalker's actions also can affect the family, friends and co-workers of the person being stalked.

*Example of Stalking*

- *Carlos dated Bryce a couple of times but eventually stopped. Then Bryce began sending Carlos multiple emails a day. Carlos told Bryce he wasn't interested and to stop contacting him. Carlos also changed his email address but somehow Bryce found his new address and began sending even more emails. Bryce also hacked into Carlos' computer and is accessing Carlos's private social media accounts.*

## F. Relationship Violence (including dating/domestic violence)

Under this policy, relationship violence is intentionally violent and/or controlling behavior by a person who is currently or was previously in a dating, sexual, romantic, domestic or other intimate relationship with the complainant. This conduct is prohibited by Tufts policy regardless of the sex/gender of the individuals involved. Relationship violence can also involve domestic violence committed by a person with whom the complainant shares a child and/or domicile in common.

***Warning: Please note that this policy addresses issues of sexual violence and uses descriptions and examples of this conduct which can be triggering.***

Relationship violence is used to gain or maintain power and control over another person. Relationship violence includes actual or threatened physical injury, sexual assault or other sexual violence, economic control and psychological and emotional abuse. Relationship violence includes behaviors that intimidate, manipulate, humiliate, isolate, frighten, terrorize, coerce, threaten, blame, hurt, injure or wound someone. Relationship violence can occur in all types of romantic, intimate and/or sexual relationships (e.g. those in same sex/gender or different sex/gender relationships). Relationship violence can occur at any stage in a relationship, including after its termination.

Relationship violence can include, but is not limited to:

- Physical/sexual abuse – sexual assault, physical violence and injury, threats of violence to self and others, displaying and/or threatening to use weapons
- Psychological/emotional abuse – controlling behaviors like requiring a person to dress or behave a certain way, social isolation
- Economic control – limiting access to funds, interfering with employment

*Examples of Relationship Violence and/or Dating/Domestic Violence*

- *Travis and Devin have been seeing each other. At lunch, Travis grabs Devin's arm forcefully and pulls Devin out of the cafeteria in front of their friends, saying Devin is eating too much. Devin is humiliated. Later, Travis says he is sorry for embarrassing Devin, although this is not the first time this has happened. Devin says things are okay now but wonders when it will happen again.*
- *Max calls his partner from his work desk every day at noon on his lunch break. Colleagues start to notice that Max's partner can be heard yelling at him during these calls. Max has also mentioned to his supervisor that things aren't going well between him and his partner. One day, Max mentions that his partner threatened to "do some damage" if he doesn't come out of work on time this evening. Everyone knows that Max relies on his partner to pick him up from work because they only have one car.*

## G. Retaliation

Retaliation is an adverse or negative action taken against an individual for raising good faith concerns about conduct or otherwise reporting behavior that may be prohibited by law or policy. Any member of the University community has the right to file a good faith complaint of sexual misconduct without fear of retaliation. It is unlawful and it is a violation of University policy to retaliate against an individual for filing a complaint of sexual misconduct or for cooperating in a sexual misconduct investigation. Retaliation against anyone who reports an incident of sexual misconduct or who in any way participates in an inquiry or investigation of sexual misconduct is strictly prohibited. The prohibition against retaliation protects an individual who raises a reasonable objection to conduct that the individual reported in good faith to be a violation of law or policy. Any person who retaliates against an individual reporting sexual misconduct, for filing a sexual misconduct complaint or for participating in a sexual misconduct investigation is subject to disciplinary action up to and including expulsion or termination by the University.

Retaliation can include but is not limited to:

- Hostility
- Intimidation
- Threats
- Exclusion
- Different treatment because of the sexual misconduct complaint
- Harassment because of an individual's participation in the investigative process

*Examples of Retaliation*

- *Cory reported to the OEO that she was concerned about Taya's manipulative behavior toward Cory since they broke up. A week after Cory made the report (and Taya and witnesses were interviewed by OEO), Cory was obviously excluded from the invitation list for a development conference sponsored by Taya because Taya's friends said Cory had "ratted Taya out to OEO."*
- *Sage accused Agha, a supervisor, of sexual harassment. When Agha received notice of the complaint, Agha immediately terminated Sage for being "such a troublemaker."*

## IV. Relationships with Students Policy

The purpose of The Relationships with Students Policy is to maintain a professional work and academic environment dedicated to promoting excellence in learning, teaching and research. To advance that mission, it is essential that those in positions of authority do not abuse or appear to abuse the power with which they are entrusted. Faculty members exercise power over students in many ways: through their teaching, grading, evaluating, mentoring, coaching, advising and recommending of students for further studies or future employment opportunities.

Accordingly, the Relationships with Students policy sets forth that no employee of the university shall enter into a romantic or sexual relationship with any undergraduate or with a graduate, professional or non-matriculated student over whom that employee has academic or professional responsibility. Given the power asymmetry of the parties, the university regards such relationships as inherently coercive constituting a conflict of interest and an abuse of authority under this policy. This policy applies even when the relationship is considered consensual by the parties involved and may, notwithstanding the consensual nature of the relationship, also result in violations of the harassment and sexual misconduct policies.

As the Sexual Misconduct Policy expressly prohibits non-consensual sexual conduct of any kind (including quid pro quo and power imbalance), an adjudication under the Sexual Misconduct policy may include findings concerning the Relationships With Students policy.

***Warning: Please note that this policy addresses issues of sexual violence and uses descriptions and examples of this conduct which can be triggering.***

## V. SPECIAL PROVISIONS FOR STUDENTS, EMPLOYEES AND THIRD PARTIES WHO WORK FOR GRANT FUNDED PROGRAMS

Applicable to Humanitarian Aid Workers funded under Sponsored Projects. These principles, as adopted here as Tufts policy, are consistent with the Sexual Misconduct and Title IX Policies of Tufts University. To the extent that these Special Provisions exceed the language found in the pre-existing Tufts policies noted above, they shall be enforceable with respect to individuals who qualify as Humanitarian Aid Workers funded under Sponsored Projects. This section of the policy went into effect August 21, 2023.

If you are a student, faculty member, employee or third party (vendor, affiliate, etc.) who works for a grant funded program and/or is paid through a grant you are subject not only to the Tufts policies herein, but you may also be responsible for upholding the standards of the grant agency who funds your program/project. These requirements are applicable to Humanitarian Aid Workers funded under grant sponsored projects which may include but is not limited to National Institute of Health, (NIH), National Science Foundation (NSF), National Aeronautics and Space Administration (NASA), the United Nations (UN) and USAID funded programs. Each of these organizations may also have their own standards and requirements of compliance for beneficiaries of the grant funds (those who work for and who may receive grant funds). To the extent that these Special Provisions exceed the language found in the pre-existing Tufts policies noted above, they shall be enforceable with respect to individuals who qualify as Humanitarian Aid Worker and/or anyone funded under a grant sponsored project. OEO is responsible for reporting violations of the Tufts policies and the grant funded program's compliance standards to the grant holder. These standards may include (this is not an exhaustive list):

1. Sexual exploitation and abuse by humanitarian workers may constitute acts of gross misconduct and are therefore grounds for termination of employment.

2. Sexual activity with children (persons under the age of 18) is prohibited regardless of the age of majority or age of consent locally. Mistaken belief regarding the age of a child is not a defense.

3. Exchange of money, employment, goods, or services for sex, including sexual favors or other forms of humiliating, degrading or exploitative behavior is prohibited. This includes exchange of assistance that is due to beneficiaries.

4. Any sexual relationship between those providing humanitarian assistance and protection and a person benefitting from such humanitarian assistance and protection that involves improper use of rank or position is prohibited. Such relationships undermine the credibility and integrity of humanitarian aid work.

***Warning: Please note that this policy addresses issues of sexual violence and uses descriptions and examples of this conduct which can be triggering.***

5. Where a humanitarian worker develops concerns or suspicions regarding sexual abuse or exploitation by a fellow worker, whether in the same agency or not, s/he [or they] must report such concerns via established agency reporting mechanisms.

6. Humanitarian workers are obliged to create and maintain an environment which prevents sexual exploitation and abuse and promotes the implementation of their code of conduct. Managers at all levels have particular responsibilities to support and develop systems which maintain this environment.

## VI. REPORTING AND DISCUSSING SEXUAL MISCONDUCT

If you have experienced any of the behaviors described in this policy, the University encourages you to seek help and support by reporting this conduct. If the University becomes aware through a third-party report that you were subjected to any behaviors under this policy of which you were not aware at the time, the University will make reasonable attempts to contact you and inform you of this information. In this regard, you may wish to proceed with disciplinary, criminal or other legal process to address the conduct as is further described here. The University will provide individuals with the support options detailed in Section IV-A in this policy, as appropriate, regardless of whether or not the individual chooses to file a disciplinary or a criminal complaint.

Reporting sexual misconduct can be difficult and complainants (or witnesses to such behavior) may experience a multitude of emotions when considering whether or not to report the conduct. The University encourages complainants (or witnesses to such behavior) to prioritize their personal safety and physical/emotional well-being to maintain health and safety. It is also important to consider reporting the conduct so that steps can be taken to prevent this conduct from happening to anyone else.

There are several options at Tufts for individuals to discuss an incident of sexual misconduct:

### 1. Confidential Resources

Confidential resources include medical providers, mental health providers, rape crisis counselors and ordained clergy, all of whom have privileged confidentiality that is recognized by law. These individuals will maintain the confidentiality of a complainant's disclosures unless (i) they are given permission to share information by the person who disclosed the information; (ii) there is an imminent threat of harm to self or others; (iii) the conduct involves suspected abuse of a minor under the age of 18; or (iv) as otherwise required or permitted by law or court order.

### 2. Limited Policy Confidential Resource

CARE will maintain a complainant's disclosures as confidential unless: (i) they are given permission to share information by the person who disclosed the information; (ii) there is an imminent threat of harm to self or others; (iii) the

conduct involves suspected abuse of a minor under the age of 18; or (iv) as otherwise required or permitted by law or court order. Because CARE employees do not have statutorily defined confidentiality, any records may be produced in litigation, subpoenaed in civil or criminal litigation and/or subject to search warrant. Also, while the CARE office will otherwise keep the details of a complainant's confidential information, CARE employees are required by law (as a "Campus Security Authority" or CSA) to provide information crimes (including crimes of sexual violence). However, CARE can fulfill that obligation without disclosing identifying information of the complainant.

### 3. Reporting Options

A number of non-confidential reporting options are available at Tufts for students and employees and include, but are not limited to Ethicspoint which has an anonymous reporting option), OEO staff, OEO Liaisons/Adjudicators, Human Resources and TUPD. While the Tufts employees will handle all disclosures with appropriate privacy and discretion under the law, they are required to share disclosed information about the incident with the Title IX Coordinator in the OEO. They are also required to report all criminal conduct to TUPD. Anyone who is not listed as a confidential resource should be considered to have the obligation to disclose information to OEO.

The following pages provide a number of confidential resources (on and off campus) and reporting options (including university and criminal justice) available to Tufts community members. Any or all of these options can be used simultaneously by complainants to address sexual misconduct regardless of whether a disciplinary and/or criminal claim is pursued. See also Resources and Supports.

## A. Immediate Confidential Reporting/Support Options

### 1. Physical Well-Being (Medical Services) – CONFIDENTIAL

- Tufts Health Service
  (students affiliated with the Medford Campus)
  617.627.3350 http://ase.tufts.edu/healthservice

Tufts Health Service clinicians are trained to provide initial care for individuals affected by sexual misconduct during regular business hours of operation. They can also make referrals for evidence collection and can provide HIV and other sexually transmitted infection testing and prevention free of charge. More information about evidence collection can be found below.

- Students affiliated with the Boston and Grafton Campuses

The following off-campus centers offer the services of a Sexual Assault Nurse Examiner (SANE) who has special training in medical examinations as well as the legal, forensic and psychological needs of an individual affected by sexual misconduct.

***Warning: Please note that this policy addresses issues of sexual violence and uses descriptions and examples of this conduct which can be triggering.***

- Beth Israel Deaconess Medical Hospital (Medford/Boston)
  617.667.7000 http://www.bidmc.org

- UMASS Memorial Medical Center (Grafton Campus)
  508.334.1000 http://www.umassmemorial.org/

- Milford Regional Medical Center (Grafton Campus) 508.473.1190
  http://www.milfordregional.org/site/index.cfm

- Additional SANE locations in Massachusetts can be found by contacting: the Boston Area Rape Crisis Center 800.841.8371
  www.barcc.org/

One of the roles of the SANE procedures is to assist in the gathering of legal, physical and forensic evidence. Gathering of physical evidence can provide important evidence in support of criminal charges.

Individuals who may wish to pursue criminal action (or wish to keep that option available) should be aware of the importance of immediately reporting the incident so that physical evidence can be preserved at the scene, as well as on the person. However, individuals should know that while a delay in reporting could limit the amount of physical and other evidence available which could impact a criminal investigation, they can always report the incident days, weeks, months or even years after the sexual misconduct occurred.

It may be difficult to know in the immediate aftermath of a sexual assault whether or not an individual will want to pursue legal charges. Having evidence collected does not commit an individual to reporting or prosecuting the assault; the evidence can be sent to the crime lab anonymously and held for a period of months. Evidence can usually be collected up to five (5) days after an assault, though likelihood of capturing evidence decreases with time. Showering, urinating and brushing teeth may destroy evidence. Clothing and bedding may contain evidence and can be taken to the ER in a *paper bag* (*not plastic*). Drugs used in a sexual assault often leave the body very quickly. Individuals who suspect they may have been drugged should attempt to collect urine to take to the ER if urination is necessary before arriving in the ER.

It is also important to consider preserving other forms of evidence, including but not limited to: text messages, emails, social media postings, photographs and/or video.

## 2. Emotional Well-Being (Counseling Services) – CONFIDENTIAL

- Tufts Counseling and Mental Health Service (SMFA and Medford Campus) 617.627.3360 or http://ase.tufts.edu/counseling/

Emergency confidential emotional support is available 24/7 to help individuals affected by sexual misconduct understand, cope with and recover from the effects of trauma. All contact with the Counseling Center is confidential and is available regardless of whether an individual is prepared to report the misconduct to police or the University. To reach a counselor during regular weekday business hours, call CMHS at 617-627-3360 and let the receptionist know it is urgent. To reach an emergency counselor on weekends and evenings, call CMHS at the number listed above and press "1" to be connected to the after-hours counselor-on-call. If you are in imminent danger, call TUPD at 617-627-3030 for immediate assistance.

- Student Advisory and Health Administration (SAHA)
  (Boston and Grafton Campuses)
  617.636.2700 or
  http://medicine.tufts.edu/Student-Services-and-Campus-Life/Student-Advisory-and-Health-Office

An emergency counselor-on-call is available, through TUPD, for immediate, confidential emotional support and assistance after hours. During normal business hours, this office provides short-term confidential counseling for personal problems, academic concerns, stress management, anxiety and family/interpersonal issues. Referrals can also be made for long-term confidential counseling services.

### 3. Tufts Chaplaincy – CONFIDENTIAL

- All campuses

  617.627.3427 or http://chaplaincy.tufts.edu/

The Tufts' Chaplaincy offers confidential pastoral care that is a type of care and counseling provided by religious professionals. It involves non- judgmental and compassionate listening that allows people to share their deepest joys, concerns and hopes in the context of their full humanity, and for many, their spirituality. It can be a way to think through a relationship or a concern and it provides a space for confidential sharing in the context of a holistic network of support.

## B. Reporting Options

### 1. Tufts University Police Department – Internal Reporting Option

If you have concerns regarding your safety or the safety of another, you should contact 911 or the Tufts University Police Department (TUPD).

- Medford/Somerville: and SMFA — 617.627.6911 or x66911 (emergency); 617.627.3030 (non-emergency)

- Boston: — 617.636.6911 or x66911 (emergency)

| | | |
|---|---|---|
| | 617.636.6610 | (non-emergency) |
| • Grafton: | 508.839.5303 or x66911 | (emergency) |
| | 508.887.4900 | (non-emergency) |

You can also contact TUPD by activating one of the blue light phones on campus.

TUPD will assist an individual affected by sexual misconduct with filing a criminal complaint, obtaining a restraining order, order of protection, transportation to the hospital, identifying safe housing on campus, issuing a No Contact Order and connecting the individual to other resources. Outside of business hours, TUPD can contact a trained professional ***confidential counselor-on-call*** who is available to provide immediate, confidential emotional support and assistance. An individual affected by sexual misconduct can request a counselor-on-call without providing identifying information or making a police report. Tufts University has police officers specially trained to work with individuals affected by sexual misconduct and they can explain the individual's rights and options.

**It is important to note that reporting sexual misconduct to TUPD or any other law enforcement does not require filing criminal charges or pursuing an investigation under University policy.** Should an individual affected by sexual misconduct wish to pursue criminal charges in a sexual misconduct case, TUPD can assist in the investigation. Tufts will honor an individual affected by sexual misconduct decision to either pursue a law enforcement remedy (i.e. investigation, order of protection) or to decline to do so. With regard to University policy violations, Tufts will seek to honor the wishes of any complaining party, provided there is not a greater risk to the community.

## 2. Office of Equal Opportunity (OEO) – Internal Reporting Option

oeo@tufts.edu 617.627.3298. http://oeo.tufts.edu/
Reporting tool: http://tufts-oeo.ethicspoint.com

The Office of Equal Opportunity (OEO) is a University-wide resource available to the Tufts community to report incidents of sexual misconduct. OEO can provide students, employees and third parties with information regarding available resources, the disciplinary options available as well as information regarding possible civil or criminal action.

OEO is responsible for making inquiries into sexual misconduct on behalf of the University and for acting as an independent fact-finding body for Tufts. OEO also facilitates training and educational events to address campus concerns about or resulting from sexual misconduct. Tufts University offers a number of training, education and awareness programs each year, many that are overseen by OEO.

### Investigations and the OEO

It is the responsibility of Tufts' OEO to make inquiries into reports of sexual misconduct on behalf of the University. OEO has the responsibility – not the parties to a complaint – to gather information as part of an investigation. Although OEO will make inquiries into matters it knows or reasonably knows about without a complaint being filed, Tufts has procedures for students, employees and third parties that provide for a prompt and equitable review of complaints. However, it should be noted that OEO and *Responsible Employees* at Tufts are **not** required to report information about violations of this policy by students learned through public awareness events such as "Take Back the Night" or other forums at which students disclose experiences with sexual violence. OEO will proceed with an inquiry or investigation in these circumstances if the disclosing student wishes to file a complaint.

OEO will only use investigators who are trained or otherwise knowledgeable about investigating and analyzing sexual misconduct complaints and have been trained on applicable law. OEO investigators are trained on issues of confidentiality and privacy such as how to respond to requests for confidentiality, how to evaluate factors when a complainant requests confidentiality and where to refer parties for on and off-campus confidential and other resources. Investigators as well as any panel members involved in adjudicatory and appeal panels shall be impartial and free from any conflicts of interest. Concerns about any potential conflicts of interest should be reported promptly to the Title IX Coordinator, to the appropriate Dean of Students (for student-related matters) or to Human Resources (for employees).

### Complaint/Adjudication Process for Students under the Sexual Misconduct Policy

Complaints under this policy against students can be addressed under the Sexual Misconduct Adjudication Process (SMAP).

Violations of the policy brought under the SMAP will be investigated and decided by the preponderance of the evidence standard (that is whether it is more likely than not that University policy has been violated by the conduct alleged). There is no time limitation for filing disciplinary complaints under the SMAP, however the University can only exercise jurisdiction over a student enrolled (as defined by the Dean of Students) at Tufts and may be limited in its ability to respond if a respondent is not enrolled. Under those circumstances, the University will assist a complainant in identifying external reporting options and will provide reasonably available support measures. Disciplinary consequences for violations of this policy may include denial of privileges, disciplinary probation, suspension and expulsion, among others.

### Complaint and Adjudication Process for Employees and Third Parties

Complaints under this policy against employees or third parties can be addressed under the Discrimination Complaint Processing Guidelines. Violations of the policy that are brought under the Guidelines will be investigated and decided by the preponderance of the evidence standard (that is whether it is more likely

than not that University policy has been violated by the conduct alleged). There is no time limitation for filing complaints under the Guidelines, however, the University can only exercise jurisdiction over a current employee and may be limited in its ability to respond if a respondent/accused is no longer employed. Under those circumstances, the University will assist a complainant in identifying external reporting options and will provide reasonably available support measures. Disciplinary consequences for violations of this policy for employees may include verbal or written warnings, a memorandum of concern, denial of a promotion, demotion, suspension or termination, among others.
Individuals who bring forward sexual misconduct claims under this process will be informed by the assigned investigator with whom information will be shared during the investigation and why.

As set forth in more detail in the disciplinary procedures for students and employees, these proceedings are expected to take up to 120 days but, depending on the complexity of the investigation and/or the severity and extent of the alleged conduct, more or less time may be required. In the last few years, the average time for these matters is 180 days but may be longer especially if the investigation is delayed by summer or winter break, scheduling conflicts of party advisors, or leaves of absence and exam schedules. OEO will make all reasonable efforts to keep cases moving along appropriately and will keep the parties apprised of the progress of the case. Individuals are also welcome to contact OEO for periodic status updates. OEO will make every effort to try and conduct investigations during school breaks or between school years unless doing so would sacrifice witness availability or otherwise compromise the process.

### Anonymous Reports

OEO will accept anonymous reports for review and potential action. However, anonymous reporters should understand that while the University will do its best to address anonymous reports, it may be limited in its ability to investigate and otherwise respond to or address them. Subject to any limitations in its ability to contact an anonymous source, OEO will inform an anonymous reporter of the information that OEO will need in order to investigate and the information that OEO will need to disclose in order to address the information reported or the complaint filed. Anonymous reports of sexual misconduct may be made using Ethicspoint: http://tufts-oeo.ethicspoint.com (anonymous reporting hotline) or by calling Ethicspoint at 1.866.384.4277.

### Requests to Remain Anonymous

Note that if a complainant requests that their name not be revealed to the respondent or asks that the University not investigate or seek action against the respondent, the Title IX Coordinator, in consultation with other administrators, will consider a number of factors in determining whether or not the University can honor this request. If the University determines that it can honor this request, the University's ability to respond fully to the incident, including pursuing disciplinary action against the alleged respondent will be limited. However, Tufts

may be able to take non-disciplinary and non-punitive measures to limit the effects of sexual misconduct and prevent sexual misconduct such as providing increased monitoring, supervision, or security at a location or under conditions where sexual misconduct occurred. See Resources and Supports and Explanation of Informal Process Options.

In some instances, a respondent may be provided with information about the University's expectations under this policy without the complainant being identified. In other cases, issues of privacy must be balanced against the University's need to investigate and take appropriate action. Although the University affirms the right of the complainant to decide whether they wish to be involved in any process to address sexual misconduct, individuals should understand that if the conduct at issue poses a threat to campus safety (which includes but is not limited to the involvement of further violence, the complainant's status as a minor, the use of weapons or potential repeat offenders) the University must take action regardless of whether the complainant wishes to proceed with their individual complaint. In similar circumstances, the University my also need to activate its emergency removal procedures for students or its administrative leave procedures for employees. See Sexual Misconduct Adjudication Process (SMAP). Under these circumstances and whenever possible, the University will inform the complainant of its needs to move forward prior to commencing an investigation and of its intent to disclose the identity of the complainant. A complainant may receive supportive measures regardless of the level of participation or engagement with applicable procedures or guidelines. See Resources and Supports.

### OEO Privacy and Non-Retaliation Statement

Tufts will respect the privacy of individuals involved in a discrimination or harassment investigation (including a sexual misconduct investigation) to the fullest extent possible. While privacy cannot be guaranteed, as a means of honoring the privacy of individuals involved in an investigation, the University will advise individuals that they, and those with whom they share information, also have a responsibility to consider and respect the privacy of other individuals involved. While discretion remains important and is critical to preserving the integrity of the investigative process and the privacy of the individuals involved, the parties are not restricted from discussing or sharing information related to their complaint with others who may support them or their case.).

Failure to maintain discretion in the sharing of complaint related information can have a number of negative consequences, including the creation or exacerbation of a hostile environment, and/or acts of retaliation. These privacy considerations are intended to help protect the privacy of all participants as well as to maintain the integrity of the investigatory and disciplinary processes. For example, it may be difficult or impossible for an investigator to find true and accurate factual information if participants in an investigation are talking about details and facts of the case with other parties involved in the matter. Sharing facts and details of the case with witnesses may also damage the integrity and/or credibility of the

evidence and/or witnesses. Also, failure to maintain appropriate discretion during an investigation could lead to misunderstanding or mischaracterizations of information shared that could result in additional claims.

In an effort to manage the privacy and integrity of an investigation, please note that parties involved in a complaint process and all witnesses to an investigation will be required to review and sign a Non-Retaliation and Privacy Acknowledgement form. This form requires an individual to acknowledge that they have considered the importance of privacy as they enter this process and that they will adhere to the non-retaliation provisions of this policy. Participants should also be aware that the University maintains the discretion to share private information, if necessary, to investigate allegations, comply with its obligations to take appropriate disciplinary action, provide appropriate supportive measures, maintain campus safety, and to adhere to our policies and other applicable laws or legal requirements. Individuals receiving private information will be advised of the expected privacy and discretion required.

OEO will maintain its investigative files (including policy related decisions, if any) for purposes of our policies and other compliance related reasons consistent with the University's record keeping policies, and in any case no less than seven (7) years. Any and all documents retained at the conclusion of a formal or informal complaint will be maintained by Tufts University in a safe and confidential manner.

*Parties to complaint processes should understand that any and all documents provided to and maintained by OEO – including complaints, responses and witness statements, investigative reports, documents provided by the parties, and other evidence examined as part of an investigation such as video, photographs, etc. – may be subject to disclosure through litigation, by subpoena or court order at any time. The University will take reasonable steps to advise the affected party of such a request unless otherwise prohibited by law.*

### Resources/Supportive Measures

Tufts will provide supportive measures for students and employees with sexual misconduct concerns, as appropriate. These supportive measures are available to individuals even if they choose not to file or pursue a disciplinary complaint or if the status of a respondent to the University is unclear (un-enrolled student, non-employee, etc.). See Resources and Supports.

Various available and appropriate supportive measures include a variety of non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to the complainant or the respondent before or after the filing of formal complaint or where not formal complaint has been filed. These supportive measures are designed to restore or preserve equal access to the recipient's education program or activity without unreasonably burdening the other party, including measure designed to protect the safety of all parties or the University's educational environment or deter sexual misconduct. The University will also prioritize confidentiality while implementing the measures as effectively as possible. Some of these supportive measures include but are not limited to: health

and counseling services, bilateral mutual No Contact Orders, mutual no trespass orders, safety planning, schedule and housing changes, academic supports or adjustments, and information about financial aid and visa/immigration related issues.

Upon initiation of a complaint under the SMAP, a bilateral and mutual No Contact Order (NCO) will be put into place between the complainant and respondent (also referred to as "parties") by OEO. The NCO will bar any communication or contact between the parties and will prohibit any interaction or exchange between them, either directly or indirectly or through others (e.g. friends, family members, attorneys, others, etc.). OEO or its designee, issues the NCO and the OEO, with the support of the appropriate Dean's Office, enforces the NCO. OEO, working together with the appropriate Dean or administrator, will work with the parties to facilitate the terms of the NCO so all parties may attend classes and use University facilities, as appropriate. The goal of the NCO is to provide a non-punitive approach that will allow the parties, to the extent possible, to continue their academic and social endeavors while still avoiding contact during the adjudication of the complaint. The NCO can be as detailed as necessary, including specific plans of where the complainant and respondent can be at specific times. Parties should understand, however, that the University is only able to enforce NCO's within its own jurisdiction (e.g. o campus, for University-sponsored programs, etc.). Parties who have concerns about contact outside the University's jurisdiction may wish to pursue protective orders (see below). The NCO may be kept in place after the conclusion of the SMAP and may be modified to be more unilateral if there is a policy violation found against the respondent. In cases where a demonstrated violation of this Order has been shown, the responsible individual may be separated from the University pending the final resolution of the disciplinary complaint (SMAP) as an interim measure (see Section I, H). The parties may be able to seek restraining orders or other orders of protection outside the University, through the courts. Information regarding restraining orders or other orders of protection can be obtained from the Tufts University Police Department (Medford: 617.627.3030; Boston: 617.636.6610; Grafton: 508.887.4900) or through local law enforcement.

The Tufts University Title IX Coordinator and Executive Director of the OEO is Jill Zellmer, MSW (Jill.Zellmer@tufts.edu 617.627.3298). She is responsible for ensuring the implementation of supportive measures and can provide information regarding available options in consultation with other relevant Tufts administrators (Deans of Students, etc.). See Resources and Supports.

### Focus on Sexual Misconduct in Disciplinary Matters

Individuals may be concerned about reporting sexual misconduct, believing that their own behavior might subject them to disciplinary action (e.g. a complainant or witness is underage and was using alcohol or drugs at the time of the incident). Parties and witnesses to a sexual misconduct matter should be assured that the focus in the University's review of sexual misconduct is always on the reported behavior, not on whether someone was, for example, using alcohol or drugs at the time. Individuals are encouraged to come forward and report such conduct regardless of the surrounding circumstances. In situations involving allegations of

sexual misconduct, Tufts University will, to the extent allowed by applicable laws and University policy, seek to make the sexual misconduct allegation the primary focus of any investigation or disciplinary action. In such circumstances and when permissible, the University will exercise leniency regarding secondary conduct violations (e.g. underage drinking) and those issues will not be subjected to adjudication. It should be noted that the use of alcohol or drugs does not excuse sexual misconduct and a person who has been incapacitated through the use of alcohol and drugs (or by any other means) cannot give effective consent to sexual activity.

#### Cooperation with Law Enforcement

OEO will conduct its own investigation and adjudication of a disciplinary complaint regardless of whether the alleged sexual misconduct is also being pursued through the criminal justice system. OEO will comply with law enforcement requests for cooperation. At times, that cooperation may require OEO to temporarily suspend its fact-finding investigation while law enforcement gathers evidence. OEO will promptly resume its fact-finding investigation as soon as it is notified that it is proper to do so.

### 3. OEO Liaisons or Sexual Misconduct/Title IX Reporting Liaisons

Several individuals from various schools within the University have been identified and trained to act as OEO Liaisons. The OEO Liaisons are University employees who have received more training about all OEO related matters and are available to receive reports of sexual misconduct. The OEO Liaisons can provide information regarding support resources and the disciplinary options available within the University. OEO Liaisons are not charged with making inquiries or conducting investigations, but rather, will direct the information they receive to OEO and the Title IX Coordinator. OEO Adjudicators, both internal and external, have received Tufts-specific training about OEO policies, protocols and processes. See OEO Liaison and Adjudicator List and the OEO Liaison and Adjudicator Training information on the OEO website.

### 4. Deans' Offices – Internal Reporting Options

The Dean's Office at each school can help students and employees report to the Title IX Coordinator and help to arrange for supportive measures through the OEO. They can also provide information about other helpful resources available to students including disability services and leave options (i.e. medical and personal leave).

***Warning: Please note that this policy addresses issues of sexual violence and uses descriptions and examples of this conduct which can be triggering.***

## Schools and Deans

| | | |
|---|---|---|
| School of Arts, Sciences and Engineering (AS&E)<br>Camille Lizarribar<br>Dean of Student Life,<br>617.627.3158<br>Camille.Lizarribar@tufts.edu | School of Engineering, (SOE)<br>Karen Panetta<br>Professor and Dean of Graduate Education<br>617.627.5976<br>Karen_A.Panetta@tufts.edu | School of Engineering, (SOE)<br>James Sarazen<br>Executive Administrative Dean<br>617.627.8870<br>James.Sarazen@tufts.edu |
| School of Museum and Fine Arts (SMFA)<br>Alyssa Baker<br>Associate Dean for Student Life<br>Alyssa.Baker@tufts.edu | School of Museum and Fine Arts (SMFA)<br>Leah Gadd<br>Associate Dean of Undergraduate Advising<br>617.627.0032<br>Leah.Gadd@tufts.edu | Friedman School of Nutrition<br>Matthew Hast<br>Assistant Dean of Student Affairs<br>617.636.6719<br>Matthew.Hast@tufts.edu |
| Human Nutrition Research Center on Aging, (HNRCA)<br>Director, TBD | The Fletcher School of Law and Diplomacy<br>Director of Student Affairs<br>TBD | The Fletcher School of Law and Diplomacy<br>Laurie Hurley<br>Associate Dean of Admissions<br>617.627.2410<br>Laurie.Hurley@tufts.edu |
| Public Health and Community Medicine Programs (PHPD)<br>Associate Director of Student Affairs<br>Olivia Zimra-Turley<br>Olivia.Zimra_Turley@tufts.edu | Cummings School of Veterinary Medicine<br>Rebecca Russo<br>Director of Admissions<br>508.839.7920<br>Rebecca.Russo@tufts.edu | Cummings School of Veterinary Medicine<br>Chad Argotsinger<br>Assistant Dean of Student Affairs<br>508.839.8733<br>Chad.Argotsinger@tufts.edu |
| School of Dental Medicine<br>Riki Gottlieb<br>Dean of Student Affairs<br>617.636.6539<br>Riki.Gottlieb@tufts.edu | School of Dental Medicine<br>Karen Alexander<br>Director of Student Affairs<br>617.636.0887<br>Karen.Alexander@tufts.edu | School of Medicine<br>John Matias<br>Associate Dean of Admissions and Enrollment<br>617.636.6568<br>John.Matias@tufts.edu |
| Graduate School of Biomedical Sciences<br>Michael Chin<br>Dean<br>617.636.2143<br>Michael. Chin@tufts.edu | | |

5. **Human Resources – Internal Reporting Option**
   Human Resources, in collaboration with the Title IX Coordinator, will provide support services and interim measures for employees with concerns about sexual misconduct. Supportive measures are available as described previously in this Policy and include assistance with accessing the Employee Assistance Program (EAP), a confidential employee counseling option, and appropriate workplace adjustments (http://hr.tufts.edu/benefits/employee-assistance-program/ or 800.451.1834). Human Resources can also assist with exploring other available support options, including leave available for individuals under Tufts policy and job protected leave (i.e. leave under the Family and Medical Leave Act and leave under the Massachusetts Domestic Violence Leave Act). In making decisions regarding the provision of supportive measures, the University will make sure that the measures do not unreasonably burden the responding party unless necessary for the safety of the parties or the community.

6. **Ethicspoint**
   http://tufts-oeo.ethicspoint.com/ or call 1.866.384.4277

   Ethicspoint, a third-party secure web tool, is also a reporting option. Any member of the Tufts community can file a report of sexual misconduct on Ethicspoint. Ethicspoint offers an anonymous reporting option providing individuals the option to report anonymously if they choose.

7. **Community Resources – External Reporting and Support Options**
   Outside of Tufts University there are many local organizations that provide support services, educational programs and other resources for complainants. While these groups are not affiliated with the University, they are included here since they can provide valuable support for members of our community.

   - **Boston Area Rape Crisis Center (BARCC)**
     www.barcc.org 617.492.8306 (business line)
     1.800.841.8371 (24-hour hotline)
   - **Rape Crisis Center of Central Massachusetts – Worcester**
     www.rapecrisiscenter.org 508.852.7600 (business line)
     1.800.870.5905 (24 hour hotline)
   - **Center for Violence Prevention and Recovery**
     www.bidmc.org/violenceprevention 617.667.8141
   - **Fenway Community Health Violence Recovery Program** www.fenwayhealth.org 617.927.6250 (business line)
     1.800.834.3242 (hotline)
   - **Victim Rights Law Center**
     www.victimrights.org 617.399.6720

- **Victims of Violence Program – Cambridge Health Alliance**
  www.challiance.org/Services/VictimsofViolenceProgram.aspx
  617.591.6360
- **Rape, Abuse and Incest National Network (RAINN)**
  www.RAINN.org 1.800.656.HOPE (hotline)
- **Respond, Inc.**
  respondinc.org 617.623.5900
- **Casa Myrna Vazquez**
  www.casamyrna.org
  1.877.785.2020 (safe link hotline) 617.521.0100 (business line)
- **GLBT Domestic Violence Project**
  www.gmdvp.org or www.glbtqdvp.org 1.800.823.1901
- **The Network for Battered Lesbians/LA Red**
  http://tnlr.org 617.742.4911

## 8. Administrative Agency Resources – External Reporting Options

**Massachusetts Commission Against Discrimination (MCAD)**
John M. McCormack Building
One Ashburton Place, Sixth Floor, Room 601 Boston,
MA 02108
617.994.6000
The MCAD prohibits sexual harassment in the workplace. The statute of limitations for filing a complaint is 300 days from the last date of discrimination.

**Equal Employment Opportunity Commission (EEOC)**
JFK Federal Building 475
Government Center
Boston, MA 02203
1.800.669.4000
The EEOC prohibits sexual harassment in the workplace. The statute of limitations for filing a complaint is 300 days from the last date of discrimination.

**U.S. Department of Education, Office for Civil Rights (OCR)**

5 Post Office Square, 8th floor Boston,
MA 02109-3921
617.289.0111
While OCR complaints should generally be filed within 180 days of the last date of the alleged discrimination, OCR may extend this filing deadline in a variety of circumstances.

***Warning: Please note that this policy addresses issues of sexual violence and uses descriptions and examples of this conduct which can be triggering.***

## Clery Act Crime Definitions

APPENDIX A – SEX CRIME DEFINITIONS

**Sex Offenses, Forcible:**

Any sexual act directed against another person, forcibly and/or against that person's will; or not forcibly or against the person's will where the victim is incapable of giving consent.

**Sexual Assault:**

An offense that meets the definition of rape, fondling, incest or statutory rape as stated in the FBI's Uniform Crime Reporting program.

**Rape:**

The penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by sex organ of another person, without the consent of the victim.

**Fondling:**

The touching of the private body parts of another person for the purpose of sexual gratification, forcibly and/or against that person's will; or, not forcibly or against the person's will where the victim is incapable of giving consent because of his/her youth or because of his/her temporary or permanent mental incapacity.

**Sex Offenses, Nonforcible:**

Unlawful, nonforcible sexual intercourse.

**Incest -** Nonforcible sexual intercourse between persons who are related to each other within the degrees wherein marriage is prohibited by law.

A. **Statutory Rape -** Nonforcible sexual intercourse with a person who is under the statutory age of consent.

---

## Selected Federal Definitions

**Domestic Violence**

**Federal Definition:** A felony or misdemeanor crime of violence committed - (i) By a current or former spouse or intimate partner of the victim;

(ii) By a person with whom the victim shares a child in common; (iii) By a person who is cohabitating with or has cohabitated with the victim as a spouse or a partner; (iv) By a person similarly situated to a spouse of the victim under the domestic violence laws of the jurisdiction in which the crime of violence occurred; or (v) By any other person against an adult or youth victim

who is protected from that person's acts under the domestic or family violence laws of the jurisdiction in which the crime of violence occurred.

### Dating Violence

**Federal Definition:**

Violence committed by a person who is or has been in a social relationship of a romantic or intimate nature with the victim.

(1) The existence of such a relationship shall be determined based on the reporting party's statement and with consideration of the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship.
(2) For purposes of this definition - (i) Dating violence includes, but is not limited to, sexual or physical abuse or the threat of such abuse. (ii) Dating violence does not include acts covered under the definition of domestic violence.
(3) For the purposes of complying with the requirements of this section, any incident meeting this definition is considered a crime for the purposes of Clery Act reporting.

### Stalking

**Federal Definition:**

(1) Engaging in a course of conduct directed at a specific person that would cause a reasonable person to - (i) Fear for the person's safety or the safety of others; or (ii) Suffer substantial emotional distress.
(2) For the purposes of this definition - (i) Course of conduct means two or more acts, including, but not limited to, acts in which the stalker directly, indirectly, or through third parties, by any action, method, device or means, follows, monitors, observes, surveils, threatens, or communicates to or about, a person, or interferes with a person's property;
(ii) Substantial emotional distress means significant mental suffering or anguish that may, but does not necessarily, require medical or other professional treatment or counseling; (iii) Reasonable person means a reasonable person under similar circumstances and with similar identities to the victim.

*(Crime definitions are from the Uniform Crime Reporting Handbook. Sex offense definitions are from the National Incident-Based Reporting System edition of the Uniform Crime Reporting Program).*

***Warning: Please note that this policy addresses issues of sexual violence and uses descriptions and examples of this conduct which can be triggering.***

## Selected Massachusetts State Definitions

### Rape:

Under Chapter 265, Section 22, of the Massachusetts General Laws, Rape is defined as: Having sexual intercourse or unnatural sexual intercourse with a person and compelling such person to submit by force and against his or her will, or compelling such person to submit by threat of bodily injury.

### Domestic Violence:

Massachusetts does not have one state definition of dating or domestic violence. However, the most commonly used definition applied to dating and/or domestic violence is found in M.G.L. c. 209A which affords complainant/victim/survivors of domestic violence (and other relationship violence) to apply for an order of protection ("restraining order") in the state courts. Under

M.G.L. c. 209A, §1, the definition is drawn from the following:

"Abuse", the occurrence of one or more of the following acts between family or household members:

(a) Attempting to cause or causing physical harm;
(b) Placing another in fear of imminent serious physical harm;
(c) Causing another to engage involuntarily in sexual relations by force, threat or duress….

"Family or household members", persons who:

(a) are or were married to one another;
(b) are or were residing together in the same household;
(c) are or were related by blood or marriage;
(d) having a child in common regardless of whether they have ever married or lived together; or
(e) are or have been in a substantive dating or engagement relationship, which shall be adjudged by district, probate or Boston municipal courts consideration of the following factors:
    (1) the length of time of the relationship;
    (2) the type of relationship;
    (3) the frequency of interaction between the parties; and
    (4) if the relationship has been terminated by either person, the length of time elapsed since the termination of the relationship.

***Warning: Please note that this policy addresses issues of sexual violence and uses descriptions and examples of this conduct which can be triggering.***

## Stalking

Under Massachusetts law, M.G.L., ch. 265, §43, an individual engages in stalking if s/he:

1) willfully and maliciously engages in a knowing pattern of conduct or series of acts over a period of time directed at a specific person which seriously alarms or annoys that person and would cause a reasonable person to suffer substantial emotional distress; and
2) makes a threat with the intent to place the person in imminent fear of death or bodily injury.

## Consent

There is currently no state statutory definition of consent.